UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BABETTE AND WILLIAM LEKSE,

    Plaintiffs,

v.                        Case No:   2:24-cv-824-JES-NPM

ALLSTATE INSURANCE COMPANY,

    Defendant.

## OPINION AND ORDER

This matter comes before Court on the Motion for Summary Judgment (Doc. #32) filed by Defendant Allstate Insurance Company ("Allstate" or "Defendant").  Plaintiffs Babette and William Lekse ("Plaintiffs") filed a Response in Opposition (Doc. #34.)  Allstate filed a Reply in Support (Doc. #35.)

This is a contract dispute.  Plaintiffs are homeowners and insureds.  Their insurer, Allstate, issued a federal flood insurance policy covering their home.  During Hurricane Ian, Plaintiffs' home was damaged by floodwaters.  Plaintiffs submitted a claim to Allstate.  On September 6, 2023, Allstate issued a letter denying the claim in part.  Plaintiffs sued Allstate on September 11, 2024.  Allstate moves for summary judgment, arguing that Plaintiffs' suit was filed five days too late and is thus barred by the statute of limitations.

For the reasons set forth below, the motion is **GRANTED.**

**I.**

Summary judgment is appropriate when the Court is satisfied that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004). In ruling on a motion for summary judgment, a court views all evidence and draws all reasonable inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010).

**II.**

Plaintiffs' home in Naples, Florida was insured by Policy No. 4804333071 (the "Policy"), a Standard Flood Insurance Policy ("SFIP") issued by Allstate. (Doc. #1-2.) Allstate, a Write-Your-Own ("WYO") insurance carrier, issued the Policy under the National Flood Insurance Program ("NFIP"). (Doc. #32-1, ¶¶ 4, 6-7.) The NFIP is administered by the Federal Emergency Management Agency ("FEMA") pursuant to the National Flood Insurance Act ("NFIA").[1]

---

[1] Congress enacted the NFIA in 1968 to provide affordable flood insurance in areas where it is uneconomical for the private market to do so. Fla. Key Deer v. Paulison, 522 F.3d 1133, 1136 (11th Cir. 2008). The NFIA authorizes FEMA to establish and administer

As the beneficiaries of flood coverage under the NFIP, Plaintiffs were required to strictly comply with SFIP requirements, including those governing the time to file suit. (Doc. #32, ¶¶ 4, 16); see 42 U.S.C. § 4072; 44 C.F.R. Part 61, App. A(1), VII(O). Their Policy provided building coverage of $250,000 (with a $2,000 deductible) and contents coverage of $90,000 (with a $2,000 deductible). (Doc. #1-2, p. 1.)

On September 28, 2022, Plaintiffs' home was damaged by flooding from Hurricane Ian. (Doc. #1, ¶ 12.) On October 6, 2022, FEMA's Acting Assistant Administrator issued FEMA Memorandum W-22012.[2] Under that Memorandum, Allstate was required to exercise its option to accept an unsigned adjuster's report in lieu of a signed proof of loss.[3] Orbis Consulting prepared an estimate of

---

the NFIP. Id. FEMA uses WYO companies like Allstate to assist in the issuance and administration of SFIPs. Newton v. Capital Assur. Co., 245 F.3d 1306, 1308 (11th Cir. 2001). As "fiscal agents" of the United States, WYO companies must strictly adhere to SFIP requirements and adjust claims in accordance with NFIP guidelines. Id. at 1311-12. Also, "the insured must adhere strictly to the requirements of the [SFIP] before any monetary claim can be awarded against the government." Sanz v. U.S. Security Inc., Co., 328 F.3d 1314, 1318 (11th Cir. 2003).

[2] FEMA Acting Ass't Admin, Memorandum W-22012 at 1, FEMA (Oct. 6, 2022), https://nfipservices.floodsmart.gov/sites/default/files/w-22012.pdf.

[3] As this Court recently held, a denial letter issued on an unsigned adjuster's report subject to Memorandum W-22012 suffices for a claim to ripen – no subsequent filing of a proof of loss is needed. Hawk v. Hartford Ins. Co. of the Midwest, No. 2:24-CV-823-JES-NPM, 2025 WL 326668, at *6-7 (M.D. Fla. Jan. 29, 2025) (Steele, J.).

the damage that Allstate used to evaluate and pay Plaintiffs' claim in part. (Doc. #32-1, ¶ 11.)

On September 6, 2023, Allstate sent Plaintiffs a Denial Letter. It stated, "[a]fter carefully reviewing the information collected and applying the terms of your policy, we have decided to **deny coverage (on a portion of your claim**; specifically, for the damaged item(s) listed below) . . . **Item(s) Denied**: The Orbis Consulting estimate for the roof, gutters[,]exterior[,] [and] the pool enclosure." (Doc. #34-1, p. 9) (emphasis added). The letter also stated that Allstate was "**deny[ing] coverage** for the additional living expenses for the lease, and the charges to pack and store personal property items." (Id.) (emphasis added).

Allstate explained that the Policy only covers the "dwelling and one attached garage" and "addresses only direct physical damage by or from flood." (Id.) "The roof, gutters, exterior[,] and charges for packing and storing personal property are not direct damage by flood" and were thus "**excluded** from coverage by the NFIP." (Id.) (emphasis added). In addition, Allstate explained that "the NFIP **does not cover** any type of additional living expenses." (Id.) (emphasis added).

Allstate cited the following Policy language to justify the denial:

> PLEASE READ THE POLICY CAREFULLY. THE FLOOD INSURANCE PROVIDED IS SUBJECT TO LIMITATIONS, RESTRICTIONS, AND EXCLUSIONS. A. THIS POLICY INSURES THE FOLLOWING TYPES

- 4 -

OF PROPERTY ONLY:

1. A one to four family residential building, not under a condominium form of ownership;

2. A single-family dwelling unit in a condominium building; and

3. Personal property in a building.

Article III — Property Insured, section A, paragraphs 1-3.

A. Coverage A — Building Property

We insure against direct physical loss by or from flood to:

1. The dwelling at the described location or for a period of 45 days at another location set forth in III.C.2.b, Property Removed to Safety.

2. Additions and extensions attached to and in contact with the dwelling by means of a rigid exterior wall, a sold load-bearing interior wall, a stairway, an elevated walkway, or a roof. At your option, additions and extensions connected by any of these methods may be separately insured. Additions and extensions attached to and in contact with the building by means of a common interior wall that is not a solid load-bearing wall are always considered part of the dwelling and cannot be separately insured.

3. A detached garage at the described location. Coverage is limited to no more than 10% of the limit of liability on the dwelling. Use of this insurance is at your option but reduces the building limit of liability. We do not cover any detached garage used or held for use for residential (i.e., dwelling), business, or farming purposes.

Article II — Definitions; paragraph 14.

14. Direct Physical Loss By or From Flood. Loss or damage to insured property, directly caused by a flood. There must be evidence of physical changes to the property.

>  Article V — Exclusions, Section A, paragraph 1-7.
>
>  We only pay for direct physical loss by or from flood, which means that we do not pay you for:
>
>  1. Loss of revenue or profits;
>
>  2. Loss of access to the insured property or described location;
>
>  3. Loss of use of the insured property or described location;
>
>  4. Loss from interruption of business or production;
>
>  5. Any additional living expenses incurred while the insured building is being repaired or is unable to be occupied for any reason;
>
>  6. The cost of complying with any ordinance or law requiring or regulating the construction, demolition, remodeling, renovation, or repair of the property, including removal of any resulting debris. This exclusion does not apply to any eligible activities we describe in Coverage D — Increased Cost of Compliance;
>
>  7. Any other economic loss you suffer.

(Id. at 9-10.)

The September Letter closed by informing Plaintiffs of their options after Allstate's partial denial of their claim. (Id. at 10.) Those options were to administratively appeal the decision or to file suit "**within one year** of the date [Allstate] **first denied** all **or part** of your claim." (Id.) (emphasis added). Allstate also directed Plaintiffs to a "Policyholders Rights" document that provided further information about filing an appeal or pursuing a lawsuit against Allstate. (Id.)

On September 28, 2023, Plaintiffs submitted a Proof of Loss

seeking payments totaling $301,199.01.  (Id. at 15.)  On October 5, 2023, Allstate sent Plaintiffs a letter upholding its prior denial, and rejecting Plaintiffs' Proof of Loss, because Plaintiffs provided "no supporting documentation of incurred cost." (Id.)  Allstate reaffirmed Plaintiffs' rights to appeal the denial or to sue "within one year of the date [Allstate] **first** denied all or part of your claim."  (Id. at 16) (emphasis added).

### III.

On September 11, 2024, Plaintiffs filed a one count breach-of-insurance-contract claim against Allstate.  (Doc. #1.)  Allstate moves for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, because Plaintiffs did not file their lawsuit within one year of Allstate's first written partial denial of their claim on September 6, 2023, and Plaintiffs are therefore barred by the statute of limitations.

> The applicable statute of limitations provides:
>
> In the event the program is carried out as provided in section 4071 of this title, the Administrator shall be authorized to adjust and make payment of any claims for proved and approved losses covered by flood insurance, and upon the disallowance by the Administrator of any such claim, or upon the refusal of the claimant to accept the amount allowed upon any such claim, the claimant, **within one year after the date of mailing of notice of disallowance or partial disallowance** by the Administrator, may institute an action against the Administrator on such claim in the United States district court for the district in which the insured property or the major part thereof shall have been situated, and original exclusive jurisdiction is hereby conferred upon such court to hear and determine such action without regard

to the amount in controversy.

42 U.S.C. § 4072 (emphasis added). A similar one-year limitation period appears in Part VII.O of the SFIP: "If you do sue, you must start the suit within one year after the date of the written denial of all or part of the claim." 44 C.F.R. Pt. 61, App. A(1), Art. VII(O). See Hawk, 2025 WL 326668, at *6–7.

Allstate first issued a written denial of all or part of Plaintiffs' claim on September 6, 2023. The present lawsuit was filed one year and five days later, on September 11, 2023. Therefore, the lawsuit is barred by the statute of limitations.

Counsel for Plaintiffs, Erin R. Dix ("Ms. Dix"), asserts that the September Letter "only provided information" about "the non-flood damages reflected in Plaintiffs' documents" and the Policy's "general terms." (Doc. #34, p. 5.) She continues, as that letter was merely "informational regarding the flood policy," it cannot "reasonably constitute a denial of Plaintiffs' claim." (Id.) She claims that Plaintiffs "agree that non-flood damages are not covered items under the flood policy" and asserts that any "non-covered items" were "not part of" Plaintiffs' claim. (Id. at 6.) Thus, Ms. Dix concludes that "there could be no breach-of-contract action at the time of the" September Letter "as the items outlined in the letter are not covered as a matter of law." (Id.)

As Allstate notes in its Reply, however, Plaintiffs "included these items in their claim." (Doc. #35, p. 2.) Thus, the September

- 8 -

Letter was the "first" written denial of all or part of Plaintiffs' claim. Raulerson v. Am. Strategic Ins. Corp., No. 8:25-CV-00407-WFJ-AAS, 2025 WL 1133767, at *3 (M.D. Fla. Apr. 17, 2025) (noting that courts in this District "have unanimously agreed that a denial letter is a proper disallowance that triggers the one-year limitation period").

Moreover, as Allstate also notes, Ms. Dix provides no evidence to support her assertions about Plaintiffs' "subjective understanding, grasp, perceptions, or beliefs." (Id. at 4.) As a general rule, attorney "statements" and "arguments" "are not evidence." Likollari v. U.S. Atty. Gen., 352 F. App'x 335, 337 (11th Cir. 2009) (per curiam); Yun Chen v. U.S. Atty. Gen., 368 F. App'x 995, 998 (11th Cir. 2010); United States v. Lawson, No. 20-14776, 2022 WL 136709, at *2 (11th Cir. Jan. 14, 2022).[4]

Finally, Ms. Dix asserts that Allstate waived the statute of limitations argument by failing to assert it as a defense. (Doc. #34, p. 8.) However, in its Affirmative Defenses, Allstate asserted that "[t]he SFIP expressly conditions the right to sue for further benefits under the policy upon the Plaintiff's prior compliance with 'all the requirements of the policy,'" including

---

[4] At any rate, had Ms. Dix provided such evidence, it would not, and could not, alter the effect of the September Letter's clear and unambiguous language denying Plaintiffs' claim. After all, the October Letter uses identical language. And Ms. Dix does not dispute that as it appears there, such language was sufficient to notify Plaintiffs that their Proof of Loss was being denied.

"**44 C.F.R. Pt. 61, App. A(1) . . . Art. VII(O), . . . which is expressly plead herein by reference.**" (Doc. #16, p. 10-11). In its entirety, Art. VII(O) states:

> O. Suit Against Us.
>
> You may not sue to recover money under this policy unless you have complied with all the requirements of the policy. **If you do sue, you must start the suit within one year after the date of the written denial of all or part of the claim**, and you must file suit in the United States District Court in the district in which the insured property was located at the time of loss. This requirement applies to any claim that you may have under this policy and to any dispute that you may have arising out of the handling of any claim under the policy.

(Doc. #35, p. 6) (emphasis added) (quoting See 44 C.F.R. Pt. 61, App. A(1), Art. VII(O)).

Even if Allstate had engaged in conduct suggestive of waiver — and to be clear, it did not — absent FEMA's "express written consent," the NFIP's requirements are strictly construed and enforced. Gowland v. Aetna, 143 F.3d 951, 953 (5th Cir. 1998) ("no provision of the [SFIP] can be altered, varied, or waived without [FEMA's] express written consent (citing 44 C.F.R. §§ 61.4(b), 61.13(d))); see Sanz v. U.S. Sec. Ins. Co., 328 F.3d 1314, 1319 (11th Cir. 2003); Suopys v. Omaha Prop. & Cas., 404 F.3d 805, 811 (3d Cir. 2005); Dawkins v. Witt, 318 F.3d 606, 611 (4th Cir. 2003); Mancini v. Redland Ins. Co., 248 F.3d 729, 731 n.1 (8th Cir. 2001); Flick v. Liberty Mut. Fire Ins. Co., 205 F.3d 386, 396 (9th Cir. 2000). See also State Bank of Coloma v. Nat'l Flood Ins.

Program, 851 F.2d 817, 820 (6th Cir. 1988) (rejecting the argument that "the [one-year] statute of limitations should be tolled," as "waivers of sovereign immunity must be strictly construed").

Accordingly, it is now

**ORDERED:**

1. Defendant Allstate Insurance Company's Motion for Summary Judgment (Doc. #32) is **GRANTED.**
2. The Complaint is **DISMISSED WITHOUT PREJUDICE.**
3. The Clerk shall enter judgment accordingly, terminate all pending deadlines, and close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this __2nd__ day of July 2025.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Parties of record